UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DOREEN M.,

                                                  Plaintiff,

   v.                                                                  5:22-CV-493
                                                                              (TJM/ATB)

COMMISSIONER OF SOCIAL SECURITY,
                                                Defendant.
_____

HOWARD D. OLINSKY, ESQ., for Plaintiff
AMANDA J. LOCKSHIN, Special Asst. U.S. Attorney, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by United States Senior District Court Judge Thomas J. McAvoy, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

**I.    PROCEDURAL HISTORY**

On November 9, 2020, plaintiff protectively filed concurrent applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning April 15, 2013. (Administrative Transcript ("T") 257-63). Plaintiff's applications were denied initially on February 25, 2021 (T. 70, 80), and upon reconsideration on April 30, 2021 (T. 97, 116). On December 6, 2021, Administrative Law Judge ("ALJ") Kenneth Theurer conducted a hearing during which plaintiff, plaintiff's mother, and vocational expert ("VE") Helene Feldman testified. (T. 41-68).

1

Plaintiff was represented by attorney Diane Williamson during the hearing. (T. 43). On December 16, 2021, the ALJ issued an order denying plaintiff's claim. (T. 10-22). This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 16, 2022. (T. 1-3).

## II.     GENERALLY APPLICABLE LAW

### A.     Disability Standards

To be considered disabled, a plaintiff seeking DIB or Supplemental Security Income benefits must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has

such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

### B. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review "– even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of

3

the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.  See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

### III.  FACTS

Plaintiff was fifty-one years old on the date of the administrative hearing.  (T. 21).  She lived with her mother, after separating from her husband, and had never lived independently.  (T. 47-48, 62).  She did not have a driver's license but was able to take public transportation.  (T. 60, 386).  She graduated from high school in special education and completed one childcare class at a local community college.  (*Id.*).  On December 9, 2020, plaintiff was diagnosed with significantly delayed adaptive behavior functioning and an IQ of 69.  (T. 364).  Her prior employment included work as a fitting room attendant at a department store and a part-time worker at a fast-food restaurant.  (T. 49-50).  She worked at the fast-food restaurant for five years from 2008 until 2013.  (T. 49).  She testified that she did not receive any special assistance during this job.  (T. 52).  She has not worked since 2013 because she was not hired by anyone from whom she sought employment.  (T. 53).

Plaintiff testified that she has been taking medication for anxiety and depressive disorders for a year and two months. (T. 55). She also testified that she took Zoloft from 2008 until 2012. (T. 56). She stopped the medication because her doctor "went someplace else, and he gradually took [her] off the medicine, because [she] didn't have that much depression." (T. 56). She started taking depression medication again after her husband asked for a divorce and made her move back to New York. (T. 56). Plaintiff does not see a therapist but receives her depression and anxiety prescription from her primary care provider. (T. 384).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 10-22). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   THE ALJ'S DECISION

The ALJ first determined that plaintiff met the insured status requirements for DIB through March 31, 2018. (T. 13). The ALJ then found, at step two of the sequential evaluation, that plaintiff had not engaged in substantial gainful activity since her alleged onset date of April 15, 2013. (*Id.*). Next, the ALJ found that plaintiff has the following severe impairments: anxiety disorder, depressive disorder, and intellectual disorder. (*Id.*). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (*Id.*).

At step four, the ALJ found that plaintiff had

> [T]he residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is

limited to simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, workplace changes.

(T. 16).

In making the RFC determination, the ALJ stated that he considered all of plaintiff's symptoms, and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§§] 404.1529 and 416.929" and Social Security Ruling ("SSR") 16-3p. (*Id.*). The ALJ further noted that he considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. [§§] 404.1520(c), 416.920c. (*Id.*). After considering plaintiff's statements regarding his symptoms, along with the other evidence of record, the ALJ concluded the plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (T. 17). The ALJ also noted that plaintiff had no past relevant work and a limited education. (T. 21).

Ultimately, the ALJ then determined there were jobs existing in significant numbers in the national economy that someone with plaintiff's age, education, work experience, and residual functional capacity could perform. (T. 21). Accordingly, the ALJ ruled that plaintiff was not disabled from the alleged onset date of April 15, 2013, through the date of the ALJ's decision. (T. 22).

V.  **ISSUES IN CONTENTION**

Plaintiff raises one argument:

      1.      The ALJ failed to properly evaluate the opinion of Physician Assistant ("PA") Cara Holohan. (Plaintiff's Brief ("Pl.'s Br.") at 7-12) (Dkt. No. 11).

Defendant contends that the ALJ properly considered PA Holohan's opinion together with the other evidence of record. (Defendant's Brief ("Def.'s Br.") at 2-14) (Dkt. No. 13). For the reasons stated below, this court agrees with the defendant and recommends that the Commissioner's determination should be affirmed.

## DISCUSSION

## VI. RFC/EVALUATING MEDICAL EVIDENCE

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R.

7

§§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2. Evaluation of Medical Opinion Evidence

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and

"evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B.     Analysis

Plaintiff first argues that the ALJ erred by discounting PA Holohan's opinion because she was not an acceptable medical source. (Pl.'s Br. at 9). Under the current regulations, a licensed physician's assistant is an acceptable medical source. 20 C.F.R. §§ 404.1502(a)(1)-(8). Therefore, the ALJ erred when he found PA Holohan was not an acceptable medical source. However, the issue of whether PA Holohan was an acceptable medical source was not particularly relevant to the ALJ's evaluation of the medical source statement, as the new regulations require an ALJ to consider all medical opinions and evaluate their persuasiveness based on the five factors contained in 20 C.F.R. §§ 404.1520c(a)-(c) and 416.920c(a)-(c).

The ALJ's improper characterization of PA Holohan is not error meriting remand. The ALJ evaluated all of the medical opinions of record, as required, citing multiple bases for his conclusion that PA Holohan's opinion was less persuasive than these other opinions. (T. 18-20). With respect to the supportability factor, the ALJ noted PA Holohan "provided limited clinical findings to support her opinion that the

claimant is limited in all areas of mental functioning." (T. 20). It is also significant that PA Holohan only treated plaintiff on two to three occasions. (T. 371, 392, 402).

With respect to consistency, the ALJ noted the PA's "opinion is less consistent with the evidence as a whole," including the opinions of State agency mental health consultants P. Fernandez, Ph.D. and K. Lieber-Diaz, Psy.D., and consultative mental health examiner Jeanne Shapiro, Ph. D., all of whom concluded that plaintiff had non-disabling mental impairments. (T. 20). The ALJ specifically noted that PA Holohan's limitations were inconsistent with plaintiff's work history. (*Id.*). He also noted that PA Holohan's limitations were inconsistent with plaintiff's "lack of on-going psychiatric abnormalities during examinations since her alleged onset date, positive response to conservative treatment for her depression, and activities of daily living." (T. 20). In another section of the decision, the ALJ noted that PA Holohan's treatment records indicated that her depression was "alleviated by keeping busy, enjoyable activities, emotional support and medication" and that her depression decreased from moderate to mild. (T. 19, 380, 402, 407). The ALJ's decision reflected that he did consider the regulatory factors in weighing PA Holohan's opinion. (T. 20). Thus, even if the ALJ had recognized that PA Holohan was an acceptable medical source, it would not have changed the outcome of his decision. *Jeffrey G. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1016 (ATB), 2021 WL 4844146, at *12 n.6 (N.D.N.Y Oct. 18, 2021) (affirming where the ALJ erred by concluding a physician's assistant was not a medical source, but the ALJ cited other bases for their conclusion).

Plaintiff also argues that the ALJ mischaracterized the record when he stated that PA Holohan's "limitations in understanding, concentration, persistence, interacting with

11

others, and adapting is inconsistent with the [plaintiff's] statement that she worked at a fast-food restaurant for five years despite her mental impairments and only stopped working on her alleged onset date because her employer did not have enough hours to offer her." (T. 20, Pl.'s Br. at 10). Plaintiff specifically argues that her work at the fast-food restaurant was consistent with PA Holohan's limitations because plaintiff's work consisted of cleaning, tables, mopping floors, doing dishes, and warming food, all on a part-time basis. (Pl.'s Br. at 10-11). Plaintiff contends that her actual work duties were consistent with PA Holohan's limitations in her ability to interact with the public, accept supervisory instructions, and get along appropriately with co-workers. (*Id.* at 11). Plaintiff also contends that her duties were consistent with PA Holohan's determinations that plaintiff would need direct supervision and assistance with simple tasks, and would need to ask simple questions. (*Id.*).

The court does not find that the ALJ's statement mischaracterizes the record. The ALJ noted that plaintiff did not receive special assistance while working at the fast-food restaurant. (T. 13, 52). A reasonable person could conclude that an individual who works at the same fast-food restaurant for five years was able to accept supervisory instruction and get along appropriately with her coworkers. Moreover, when the ALJ discussed her prior work, he emphasized that plaintiff left her job because her employer did not have enough hours for her, not because she was fired. (T. 20). The fact that the ALJ drew a reasonable inference regarding plaintiff's ability to sustain employment despite her mental limitations would not constitute a mischaracterization of the record requiring remand, even if plaintiff's counsel might suggest a different inference. *Cf. Scott v. Berryhill*, No.6:16-cv-06780262, 2018 WL 6582794, at *5 (W.D.N.Y Dec. 14,

2018) (finding a significant mischaracterization where the ALJ noted that there was little indication that the plaintiff was involved with individual therapy, when the record contained an opinion stating plaintiff was consistently attending appointments); *Gomez v. Comm'r of Soc. Sec.*, No. 15-CV-00013, 2017 WL 1194506, at *16 (S.D.N.Y Mar. 30, 2017) ("[T]he ALJ mischaracterized Gomez's hospitalization history at step three, inaccurately stating that she experienced no episodes of decompensation after she filed her SSI application and that she 'was able to function' in her drug treatment program, when in fact she was involuntarily hospitalized, for an extended episode of decompensation, while in that program.").

PA Holohan marked the category of social interaction as limited but did not offer any specific limitations regarding her ability to interact with the public.[1] (T. 393-94). Immediately following this section, PA Holohan merely stated plaintiff "would need direct supervision, simple tasks, and assistance." (*Id.*). The ALJ accounted for these limitations by limiting plaintiff's RFC to "simple, routine, and repetitive tasks in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, workplace changes." (T. 16). In sum, the court concludes that the ALJ properly evaluated the opinions of PA Holohan in light of the

---

[1] The ALJ found that plaintiff had no limitations with interacting with others because "[c]linical findings indicate that the claimant presents for exams as cooperative and with adequate social skills, including appropriate eye contact, normal motor behavior, and adequate expressive and receptive language skills [T. 372, 380-81, 384-91, 404-05, 417-18, 421]. The claimant also engages in social activities including, socializing with friends and family and grocery shopping [T. 61, 384-91]. At her consultative psychiatric examination, the claimant reported that she could also take public transportation [T. 386]." (T. 14). The court finds this analysis demonstrates substantial evidence supporting plaintiff's ability to interact with others.

other evidence of record, and finds that the ALJ's RFC and ultimate determination that plaintiff was not disabled were supported by substantial evidence.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED**, and plaintiff's complaint be **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Hum. Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 17, 2023

*Andrew T. Baxter*
Andrew T. Baxter
U.S. Magistrate Judge